23CA2073 Marriage of Kowalski 09-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2073
Boulder County District Court No. 17DR30329
Honorable Thomas F. Mulvahill, Judge

In re the Marriage of

Karla Rosete Kowalski, n/k/a Karla Rosete Nunez,

Appellee,

and

Robert Gerard Kowalski,

Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

Kottke & Brantz LLC, Jennifer C. Terry, Boulder, Colorado, for Appellee

Robert Gerard Kowalski, Pro Se

¶ 1    In this post-decree dissolution of marriage case between Karla Rosete Kowalski, now known as Karla Rosete Nunez (mother), and Robert Gerard Kowalski (father), father appeals the district court's order adopting a magistrate's ruling that modified parental responsibilities and awarded mother attorney fees. We reverse the portion of the order awarding attorney fees and remand for the court to vacate the award. We otherwise affirm.

## I.    Relevant Facts and Procedural History

¶ 2    In the district court's 2019 permanent orders, the court allocated to the parties equal parenting time and joint decision-making responsibility for their two children, J.K. and N.K.

¶ 3    About two years later, mother moved to modify and restrict father's parenting time, and she requested sole decision-making responsibility. The magistrate appointed a child and family investigator (CFI). The parties' older child, J.K., began refusing parenting time with father, and, after a hearing, the magistrate found that J.K.'s emotional well-being was endangered with father and restricted his parenting time.

¶ 4    In November 2022, and while mother's request to modify parental responsibilities remained pending, father, appearing pro

1

se, moved to restore his parenting time. And in December 2022, mother supplemented her motion to modify.

¶ 5 During the pendency of these motions, the court imposed an injunction against father due to his vexatious litigation (related to other post-decree disputes), and it required father to request and obtain permission from the court before he could file future motions. Father appealed the court's ruling, and another division of this court affirmed the court's imposition of this restriction. *In re Marriage of Kowalski*, (Colo. App. Nos. 23CA0188, 23CA0740, Jan. 18, 2024) (not published pursuant to C.A.R. 35(e)) (*Kowalski I*).

¶ 6 Meanwhile, after multiple continuances that were requested, at least in part, by father, the magistrate set a hearing on the pending parental responsibilities motions for August 2, 2023. Approximately two weeks before that hearing, father asked the court for permission to file another motion to continue. The magistrate allowed him to file the motion and, in doing so, reminded him of his duty to confer with mother's attorney before filing it.

¶ 7 On July 21, 2023, father filed the motion to continue (written motion to continue). In response, mother's attorney certified to the

2

magistrate that father did not confer with him. The magistrate then denied the motion due to father's failure to confer under C.R.C.P. 121, section 1-15(8).

¶ 8 At the start of the August 2023 hearing, father again asked the magistrate to continue the hearing (oral motion to continue). The magistrate denied his request. Father then informed the magistrate that he would not participate and left the hearing.

¶ 9 The magistrate proceeded without father and, after the hearing, found that his parenting time endangered the children. The magistrate restricted father's parenting time with N.K. and continued the parenting time restriction with J.K. The magistrate also allocated to mother sole decision-making responsibility. Additionally, the magistrate granted mother's request for an award of attorney fees due to father's continued vexatious filings, which included his motion to restore parenting time, and ordered father to pay mother's attorney $3,920 in attorney fees and costs.

¶ 10 Father moved for reconsideration of the attorney fees award and petitioned for district court review of the parental responsibilities order. In separate orders, the court denied the

motion for reconsideration and adopted the parental responsibilities order.

## II.  Standard of Review

¶ 11    Our review of a district court's order adopting a magistrate's ruling is effectively a second layer of appellate review. *In re Parental Responsibilities Concerning E.E.L-T.*, 2024 COA 12, ¶ 15.  We accept the magistrate's factual findings unless they are clearly erroneous and review de novo issues of law. *Id.*

## III.  Father's Motions to Continue

¶ 12    Father contends that the district court erred by adopting the magistrate's denial of his written and oral motions to continue.  We reject his contentions.

### A.  Governing Legal Standards

¶ 13    Continuances shall be granted only for good cause.  C.R.C.P. 121, § 1-11.  The burden is on the moving party to show good cause. *See In re Marriage of Lorenzo*, 721 P.2d 155, 156 (Colo. App. 1986).

¶ 14    We may not disturb a court's ruling on a motion to continue absent a showing that the court abused its discretion, meaning that it acted in a manifestly arbitrary, unreasonable, or unfair manner,

4

or it misapplied the law.  *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## B.    Written Motion to Continue

¶ 15    Father contends that the magistrate erred by denying his written motion to continue based on his purported failure to confer with mother's attorney.  We are unpersuaded.

### 1.    Jurisdiction

¶ 16    As an initial matter, mother argues that we lack jurisdiction to review the magistrate's ruling because father did not timely appeal it.  *See In re Estate of Ybarra*, 2024 COA 3, ¶ 9 ("The timely filing of a notice of appeal is generally a jurisdictional prerequisite for appellate review.").  We disagree.

¶ 17    A party seeking appellate court review of a magistrate's ruling must first file a petition for review to the district court.  C.R.M. 7(a)(11).  That petition must be filed within twenty-one days of the date the magistrate's written order is transmitted to the parties.  C.R.M. 7(a)(4), (5).  But the district court may review only a final order, and a magistrate's order is not final until it fully resolves the issue or claim, leaving nothing further for the magistrate to do.

5

C.R.M. (7)(a)(3); *see also Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co., LLC*, 2023 COA 66, ¶ 14.

¶ 18     The magistrate's denial of father's written motion to continue did not fully resolve the parties' disputes and, therefore, was not a final order. The magistrate's ruling did not become final until the magistrate issued the August 3, 2023, order resolving their parental responsibilities dispute. *See* C.R.M. 7(a)(3); *see also Mulberry Frontage Metro. Dist.*, ¶ 14; *cf. People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (concluding that the appellant was required to raise arguments concerning the magistrate's denial of a motion to continue in the petition for review of the magistrate's final judgment). Father timely petitioned the district court for review of that order, and in that petition, he challenged the magistrate's denial of his written motion to continue. *See Mulberry Frontage Metro. Dist.*, ¶ 14 ("Once a court enters a final judgment, the court's earlier orders merge into the judgment and generally become reviewable."). And this court accepted as timely father's appeal of the court's order adopting the magistrate's August 2023 ruling. *See In re Marriage of Kowalski,* (Colo. App. No. 23CA2073, Feb. 16,

2024) (unpublished order).  We thus have jurisdiction to review the magistrate's ruling on the written motion to continue.

## 2.    Discussion

¶ 19     A party must confer with the opposing party before filing a motion with the court.  C.R.C.P. 121, § 1-15(8).  The motion must also include a certification that the moving party conferred in good faith with the opposing party and advise the court whether the motion will be opposed.  *Id.*  If there is no conferral, the moving party must state the reason why, including all efforts made to confer.  *Id.*

¶ 20     Father argues that mother's attorney falsely represented that he failed to confer before filing the written motion to continue and that the magistrate improperly relied on that misrepresentation to deny his motion.  He highlights that, before he filed the written motion to continue, he emailed the motion to mother's attorney.  However, the record reveals that father sent this email only two minutes before he filed his motion, and, in that email, he merely notified mother's attorney that he was filing the motion.  The intent of conferral is to provide the parties with an opportunity "to work out the difference[s] prompting the motion" and to determine

7

whether the motion will be opposed. C.R.C.P. 121, § 1-15 cmt. 2. Father's email did neither. Therefore, we are not persuaded by father's claim that mother's attorney misrepresented his failure to adhere to the conferral requirements under C.R.C.P. 121, section 1-15(8).

¶ 21 Father also asserts that when he filed and served mother's attorney with his request to file the written motion to continue, as required by the court-imposed injunction, he made a "de facto conferral" and a "de facto certification" of conferral. But father overlooks that following this request, the magistrate directed him to confer with mother's attorney before filing the written motion to continue. That is, the magistrate determined that his request to file a motion did not satisfy his duty to confer. And beyond father's general assertion, he directs us to nothing in the rule or any other legal authority providing that this "de facto" conferral and certification complied with C.R.C.P. 121, section 1-15(8) or adhered to the intent of the rule. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (declining to review an undeveloped contention).

¶ 22　Father also notes that the magistrate modified her initial ruling on the written motion to continue when she later found that father's motion did not include a certification of conferral. *See* C.R.C.P. 121, § 1-15(8). But father's motion plainly did not include a statement certifying that he conferred with mother's attorney, and nothing prevented the magistrate from clarifying her ruling to deny the written motion to continue. *See People in Interest of J.D.*, 2020 CO 48, ¶ 10 ("[A] magistrate, just as a judge, retains the ability to modify . . . any . . . rulings made in the course of judicial proceedings until those proceedings culminate in a final, reviewable order or judgment.").

¶ 23　The district court thus did not err by rejecting father's arguments that the magistrate improperly denied his written motion to continue.

### C.　Oral Motion to Continue

¶ 24　Father next contends that the magistrate abused her discretion by denying his oral motion to continue. We disagree.

¶ 25　At the hearing, father argued that the court-imposed injunction interfered with his ability to prepare for the hearing, and he orally moved to continue the hearing. The magistrate

9

determined that the court-imposed injunction did not prevent father from preparing for the hearing, which had been pending for over a year; the hearing had previously been continued; and the children's best interests were not served by further continuing the hearing. And the magistrate concluded that father did not establish good cause for a continuance.

¶ 26 Father generally disagrees with the magistrate's ruling and argues that he was not the reason for the delays in the case. But as the magistrate found, it was father, not mother, who previously sought and obtained the continuances. Moreover, even if, as father claims, mother contributed to the delay, the record supports the magistrate's determinations that further delaying the parental responsibilities dispute was contrary to the children's best interests and that there was not good cause to grant another continuance. *See E.B.*, ¶ 14. To the extent father also asserts that the magistrate improperly relied on "non-procedural grounds" to deny his motion for the first time at the hearing, he does not develop a legal or factual argument in support of this conclusory assertion. *See S.Z.S.*, ¶ 29.

¶ 27     The magistrate thus acted within her discretion by denying

father's oral motion to continue, and the district court did not err

by adopting that ruling.

IV.     Purported Exclusion of Evidence

¶ 28     We also reject father's contention that the magistrate

improperly excluded his evidence by denying the motions to

continue.

¶ 29     We review a court's exclusion of evidence for an abuse of

discretion. *See D.R. Horton, Inc. v. Bischof & Coffman Constr., LLC*,

217 P.3d 1262, 1267 (Colo. App. 2009).

¶ 30     Father argues that the magistrate's refusal to continue the

hearing precluded him from calling his primary expert witness,

Mark Vatsaas. However, the magistrate struck Vatsaas as an

expert witness before the hearing due to father's failure to provide

the required expert witness disclosures. *See* C.R.C.P. 26(a)(2)(B)

(discussing the disclosure requirements to call an expert witness).

Father directs us to nothing in the record showing that he provided

the necessary disclosures for Vatsaas, and thus, it was this failure,

not the denial of his motions to continue, that precluded the

admission of Vatsaas' expert testimony.

¶ 31     Father goes on to argue that the magistrate's order striking

Vatsaas' testimony did not specify a timeframe in which he could

provide the necessary witness disclosures and thereby present the

expert testimony.  However, the magistrate indicated in the order

issued three weeks before the hearing that father may be able to

present this expert testimony if he provided the necessary

disclosures "in a timely manner."  The magistrate thus indicated

that she was giving father time beyond the previous disclosure

deadline to file the expert disclosures.  *See* C.R.C.P. 16.2(g)(5).  And

father directs us to no legal authority that required the magistrate

to do more or that otherwise establishes that the magistrate erred.

*See S.Z.S.*, ¶ 29.

¶ 32     Father also claimed that due to the court's "injunction," he

needed a continuance to be able to present Vatsaas' testimony.  The

magistrate rejected this claim, and we discern no error in that

determination.  The court-imposed injunction required father to

obtain the court's approval before filing a motion.  It did not place

any additional requirements on his ability to comply with the

required expert disclosures or secure a witness for the hearing.  To

the extent father is attempting to challenge the propriety of the

injunction, that ruling was affirmed in *Kowalski I,* and we may not revisit that decision.

¶ 33     Father further argues that, when the magistrate denied the oral motion to continue, she improperly found that Vatsaas' testimony was irrelevant when there was "no basis for drawing such [a] conclusion."  However, the magistrate was aware of the scope of Vatsaas' testimony, given father's representation before the hearing that Vatsaas was father's parenting coach and that he would discuss the reasons for the tension between J.K. and father under "the concept of [a]ttachment [t]heory."  Moreover, the magistrate did not determine that Vatsaas' testimony was irrelevant; she found that, under the circumstances, his testimony did not justify further delaying the proceedings.  Such a finding was within the magistrate's broad discretion when ruling on the oral motion to continue.  *See E.B.,* ¶ 14.

¶ 34     Father also asserts that by not continuing the hearing, the magistrate prevented him from presenting evidence on mother's financial motives and other relevant evidence.  But beyond father's general assertion, he does not develop any factual or legal argument on appeal explaining why he was unable to present this additional

13

evidence at the hearing, particularly when he voluntarily chose to leave the hearing without presenting any evidence. *See S.Z.S.,* ¶ 29.

¶ 35    We likewise reject father's conclusory argument that the magistrate violated his due process rights by excluding his evidence. Due process requires that a party be provided with a meaningful opportunity to be heard. *In re Marriage of Hatton,* 160 P.3d 326, 329 (Colo. App. 2007). Father had the opportunity to present evidence, but he chose not to by leaving the hearing. He therefore was not deprived of his due process rights. *See In re Taylor,* 134 P.3d 579, 584 (Colo. App. 2006) (holding that a party who did not appear at a hearing was not deprived of due process).

¶ 36    To the extent father further suggests that the magistrate violated the "Equal Protection Clause" and "created an unequal and prejudicial application of the law," he again develops no legal argument in support of this suggestion. *See S.Z.S.,* ¶ 29. Nor does he direct us to where in the record he raised this issue to the magistrate or the district court. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.,* 2012 CO 61, ¶ 18 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."); *K.L-P.,* 148 P.3d at 403

14

(concluding that to preserve an issue for appellate review, an appealing party must assert the contention to the district court in a petition for review).

¶ 37    Thus, the magistrate did not abuse her discretion.

V.    Magistrate's Comments to J.K.

¶ 38    At the hearing, the magistrate admitted in camera testimony from J.K.  Father contends that, during that testimony, the magistrate made disparaging comments about him, which influenced J.K.'s testimony and exhibited the magistrate's bias against him.

¶ 39    However, father neither raised this issue to the magistrate nor asserted it in his petition for review to the district court.  *See Melat, Pressman & Higbie*, ¶ 18; *K.L-P.*, 148 P.3d at 403; *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal.  We review only the specific arguments a party pursued before the district court.").  Additionally, father does not identify any record support demonstrating that he sought the magistrate's recusal due to her alleged bias against him.  *See In re Marriage of Zebedee*, 778

15

P.2d 694, 699 (Colo. App. 1988) (declining to address allegations of judicial bias not raised in a motion for recusal). We thus need not address father's unpreserved argument.

## VI. Modifying Parental Responsibilities Concerning N.K.

¶ 40    Father next contends that the magistrate erred by restricting his parenting time with N.K. because the magistrate failed to consider the CFI's recommendations when reaching her decision.[1] We disagree.

¶ 41    The court's discretion in the area of parenting time is broad, and we exercise every presumption in favor of upholding its decision. *In re Marriage of Collins*, 2023 COA 116M, ¶ 8. We will not disturb a court's ruling absent a showing that the court abused its discretion. *Id.*

¶ 42    A court may restrict a parent's parenting time, when it finds that parenting time endangers the child's physical health or significantly impairs the child's emotional development.

---

[1] Father does not challenge the magistrate's ruling to continue the restriction on his parenting time with J.K. Moreover, we note that because J.K. has turned eighteen during the pendency of this appeal, any issues related to the parenting time order regarding J.K. are moot. *See In re Marriage of Tibbetts*, 2018 COA 117, ¶ 12.

16

§ 14-10-129(1)(b)(I), C.R.S. 2024.  The court may also modify the allocation of decision-making responsibility if it finds that retaining the current decision-making allocation endangers the child. § 14-10-131(2)(c), C.R.S. 2024.

¶ 43     In the CFI's February 2022 report, she opined that father's verbal abuse endangered J.K.'s mental health and recommended restricting his parenting time with J.K.  The CFI also said that she suspected N.K. was subjected to father's verbal abuse.  However, the CFI reported that there was not enough evidence to confirm that suspicion and, therefore, did not recommend modifying parenting time or decision-making responsibility related to N.K.

¶ 44     Father complains that the magistrate did not consider and follow the CFI's recommendations regarding N.K.  Because father chose not to participate in the hearing, however, he did not argue to the magistrate that she should adopt the CFI's recommendations. Moreover, the magistrate was under no obligation to follow the CFI's year-and-a-half old recommendation.  *See In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1133 (Colo. 2010).

¶ 45     In addition, while the CFI lacked evidence to confirm her suspicion that N.K. was subject to father's verbal abuse, the

evidence at the hearing provided the magistrate with ample evidence to corroborate that suspicion. Mother testified that father's parenting time with N.K. had "gotten worse" since the magistrate restricted his parenting time with J.K. She also said that father's recent irrational behavior placed N.K. "in imminent danger" and that she was concerned about N.K.'s safety with father. In addition, J.K. testified that they knew "the pain and suffering" N.K. was experiencing, that father was "terrible for [N.K.'s] mental health," and that they could see "a lot of parallels" between the emotional abuse toward them and N.K. (J.K.'s pronouns are they/them.)

¶ 46 The magistrate found J.K. credible and determined that father's angry rants and verbal abuse endangered N.K. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (recognizing that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn, are matters within the district court's sole discretion).

¶ 47 In sum, given the record support for the magistrate's parental responsibilities decision and the absence of any showing that the

decision was an abuse of the magistrate's discretion, there was no basis to disturb it. *See Collins*, ¶ 8. The district court therefore did not err by adopting the magistrate's ruling modifying father's parental responsibilities concerning N.K.

## VII. Attorney Fees Award

¶ 48 Father contends that the attorney fees award must be reversed because the magistrate abused her discretion by not making the required findings in support of awarding attorney fees against a pro se party. *See Collins*, ¶ 51 (reviewing attorney fees order for an abuse of discretion). We agree.

### A. Jurisdiction

¶ 49 Before reviewing the attorney fees award, we must address mother's claim that father did not timely appeal the magistrate's order. *See Ybarra*, ¶ 9.

¶ 50 In the August 2023 order, the magistrate ordered father to pay mother's attorney fees due to his vexatious filings and directed mother's attorney to file an affidavit of fees. After the magistrate granted mother's attorney's request for $3,800 in attorney fees and $120 in costs, father moved for reconsideration, raising the same issue asserted on appeal. The district court denied that request on

19

October 9, 2023, and the next day resolved father's petition for review of the parental responsibilities order. Father then filed his notice of appeal on December 4, 2023.

¶ 51 Mother argues that father's appeal was not timely because the deadline to appeal the October 9, 2023, order was November 27, 2023. *See* C.A.R. 4(a)(1) (requiring the filing of an appeal within forty-nine days of the entry of the final order). However, the order on attorney fees was not a final, appealable order until the court fully resolved the post-decree litigation concerning the modification of parental responsibilities. *See Camelot Invs., LLC v. LANDesign, LLC*, 973 P.2d 1279, 1280 (Colo. App. 1999) ("Generally, an order that resolves less than all the issues in an action is not a final judgment for purposes of appeal."); *State Farm Fire & Cas. Co. v. Bellino*, 976 P.2d 342, 343-44 (Colo. App. 1998) (dismissing an appeal of an award of attorney fees before the entry of a final judgment on the merits). That did not occur until the district court entered its October 10, 2023, order. *See Mulberry Frontage Metro. Dist.*, ¶ 16 (For postjudgment orders, "we consider whether the order ends 'the particular part of the action in which it is entered,' leaving 'nothing further for the court pronouncing it to do in order

to completely determine the rights of the parties as to that part of the proceeding.'" (quoting *AA Wholesale Storage, LLC v. Swinyard*, 2021 COA 46, ¶ 13)).  Father's appeal of that order was accepted as timely.  *See Kowalski,* (Colo. App. No. 23CA2073, Feb. 16, 2024) (unpublished order).  And the court's October 9, 2023, order on attorney fees merged into that final order for purposes of appeal. *See Mulberry Frontage Metro. Dist.,* ¶¶ 14, 18.[2]

¶ 52    Therefore, we may review the award of attorney fees.

### B.    Discussion

¶ 53    A court may assess reasonable attorney fees against a party when it finds that the party brought an action that lacked substantial justification.  § 13-17-102(4), C.R.S. 2024.  But when a party is not represented by an attorney, the court must also find that "the party clearly knew or reasonably should have known" that the action "was substantially frivolous, substantially groundless, or substantially vexatious" before it may assess attorney fees against

---

[2] We note that the attorney fee order was final for purposes of review by the district court because that order resolved "an issue or claim."  C.R.M. 7(a)(3); *see People v. Maes*, 2024 CO 15, ¶ 13. However, nothing in the *Maes* decision alters the determination of finality of the *district court's* order for purposes of our appellate review.

21

that pro se party. § 13-17-102(6). Absent this finding, an order "awarding attorney fees cannot stand." *Artes-Roy v. Lyman*, 833 P.2d 62, 63 (Colo. App. 1992).

¶ 54 The magistrate found that father had made "continued vexatious filings." But the magistrate made no finding that father, who was appearing pro se, clearly knew or reasonably should have known that his conduct was substantially vexatious or that it was substantially frivolous or substantially groundless. *See* § 13-17-102(6). Nor did the magistrate make any other findings explaining the basis of the attorney fees award. *See* § 13-17-103(1), C.R.S. 2024. The district court had an opportunity to address this error, but failed to do so. Rather, the district court concluded that "[t]here was no legal basis for [father's] motion for reconsideration" even though father had explained that his motion was mistitled and was, in fact, a petition for review of the magistrate's ruling under C.R.M. 7(a).

¶ 55 We therefore reverse the order awarding mother $3,920 for her attorney fees and costs. *See Artes-Roy*, 833 P.2d at 63.

## VIII.  Disposition

¶ 56    We reverse the portion of the district court's order adopting the magistrate's award of attorney fees and costs to mother and remand for the court to vacate that award.  The order is otherwise affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.